```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                  03-CV-2434(JMR/JSM)
```

Rodney D. Spears, Sr.           )
                                )
        v.                      )           ORDER
                                )
Red Lake Band of Chippewa       )
Indians                         )

Rodney Spears petitions for a writ of habeas corpus. This matter was originally heard by a United States Magistrate Judge on May 25, 2004, who recommended denying the petition. Mr. Spears timely objected to the Report and Recommendation pursuant to Local Rule 72.1(c)(2). After a de novo review, the Court declines to adopt the Report and Recommendation. The petition is hereby granted.

I. Factual Background

In the early morning hours of April 1, 2000, petitioner -- intoxicated and lacking a valid driver's license -- drove his car within the Red Lake Indian Reservation. Tragically, he struck and killed a person lying on the road. He neither stopped, notified police, nor rendered assistance. Instead, he drove to his sister's house and did nothing.

For these acts, he was criminally charged in both federal and tribal court.[1] He pleaded guilty to a federal charge of involuntary manslaughter, receiving a 14-month sentence. After his release, he faced six separate charges in Red Lake Tribal Court: (1) negligent homicide; (2) driving under the influence of alcohol ("DUI"); (3) failing to take a blood, breath, or urine test; (4) failing to stop at the scene of a traffic accident; (5) driving without a license; and (6) a liquor violation.[2] Each charge arose from the April 1, 2000, incident.

Petitioner was represented by counsel and pleaded guilty to all six charges. He was sentenced to 12 months for the negligent homicide, and 6 months apiece for the DUI, sobriety test, and failure to stop violations.[3] As the sentences were imposed to run consecutively, the net result was a 30-month sentence. He was also fined a total of $200 for driving without a license and the liquor violation.

---

[1]These collateral prosecutions were proper under the dual sovereignty exception to the Fifth Amendment, because the Red Lake Band acts as a separate sovereign when it prosecutes its own members for crimes not preempted by Congress. See United States v. Wheeler, 435 U.S. 313, 323-27 (1978).

[2]See Red Lake Tribal Code §§ 502.04, 600.02, 600.03, 600.01, 600.07, and 504.08, respectively. The license and liquor violations are petty misdemeanors for which imprisonment is not authorized. See Tribal Code §§ 500.02, subd. 2. A reckless driving charge was dismissed pursuant to the plea agreement.

[3]The Red Lake Tribal Code authorizes consecutive sentences. See Tribal Code § 411.01, subd. 6.

After exhausting his tribal appeals, petitioner filed this case[4] claiming his sentence violates the Indian Civil Rights Act ("ICRA"), which limits tribal prison sentences to a 12-month maximum "for conviction of any one offense." While he admits his actions violated several of the Tribal Code's provisions, he claims he committed only "one offense": unlawful driving resulting in the death of another person.

Respondent, Red Lake, contends that petitioner's sentence complies with the ICRA because his driving behavior constituted multiple distinct offenses. First, petitioner drove drunk and without a license, thus committing the DUI and the license violations; second, he struck and killed a man lying in the road, committing negligent homicide; third, he fled, resulting in the failure to stop violation; and finally, he refused to submit to the required sobriety test.[5]

II. Discussion

"The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian Tribe." 25 U.S.C. § 1303. The writ provides a remedy to a person who is "in custody in violation of the Constitution or laws or treaties of the United

---

[4]Since filing his petition, he has been released from jail on a medical furlough. His return to custody has been stayed pending this Court's decision.

[5]The record is unclear as to the precise time this occurred.

States." 28 U.S.C. § 2241(c)(3). Petitioner claims his custody violates the ICRA, a law of the United States. His claim is therefore ripe for review.

It is axiomatic that the interpretation of a statutory phrase such as "any one offense" begins with the statute's own language. <u>Group Life & Health Ins. Co. v. Royal Drug Co.</u>, 440 U.S. 205, 210 (1979). "Where the language of a statute 'is unambiguous, the statute should be enforced as written unless there is clear legislative intent to the contrary.'" <u>United States v. Milk</u>, 281 F.3d 762, 766 (8th Cir. 2002) (quoting <u>United States v. McIntosh</u>, 236 F.3d 968, 972 (8th Cir. 2001)). "If, on the other hand, the language of a statute is ambiguous," the Court must determine Congress's intent in order to "effectuate the underlying purposes of the law." <u>United States v. McAllister</u>, 225 F.3d 982, 986 (8th Cir. 2000).

    a. <u>Ambiguity</u>

The words of the ICRA are explicit: an "Indian tribe in exercising powers of self-government shall . . . in no event impose for conviction of any one offense any penalty or punishment greater than imprisonment for a term of one year [or] a fine of $5,000, or both." 25 U.S.C. § 1302(7).

But the phrase "any one offense" is ambiguous. Indeed, similar language has given rise to controversy and disagreement in other contexts. The Constitution's Fifth Amendment Double Jeopardy

provision, for example, prohibits multiple prosecutions "for the same offence." U.S. Const. Amend. V. This phrase has been subject to at least two reasonable interpretations: it could bar consecutive prosecutions for offenses arising out of the "same evidence," or it could bar consecutive prosecutions for offenses arising out of the "same transaction." See Ashe v. Swenson, 397 U.S. 436, 449-54 (1970) (Brennan, J., concurring) (arguing for the "same transaction" test).[6]

A similar issue arises in the context of the Sixth Amendment right to trial by jury, where no jury is required. That right does not attach to "petty offense" prosecutions, and "[a]n offense carrying a maximum prison term of six months or less is presumed petty." Lewis v. United States, 518 U.S. 322, 326 (1996). The conflict occurs when a person is charged with several petty offenses, where consecutive six-month sentences could result in years of imprisonment without any right to a jury. This presents the question whether the several petty offenses should be considered a single serious offense.

The Supreme Court first addressed this question in Codispoti v. Pennsylvania. 418 U.S. 506 (1974). There, two defendants each faced multiple counts of criminal contempt for which they were

---

[6]The "same transaction" test has been rejected by the Supreme Court in the context of double jeopardy for successive prosecutions. See, e.g., United States v. Dixon, 509 U.S. 688, 709 n.14 (1993).

5

tried and convicted without a jury. One defendant was sentenced to 39 months' imprisonment, consisting of six consecutive six-month terms followed by a three-month term; the other received a 32-month sentence, consisting of five six-month terms plus a two-month term. Id. at 509-10. The Court held the separate acts of contempt to be in effect a single serious offense because they "arose from a single trial, were charged by a single judge, and were tried in a single proceeding." Id. at 517.[7] In other words, they formed a single criminal transaction.

The Court recognizes that Fifth and Sixth Amendment precedents do not decide this case -- this case concerns the language of the ICRA.[8] But the aforementioned cases illustrate the ambiguous meaning of "any one offense." It could mean either "any discrete violation of the Tribal Code" or "any prosecution arising from a single criminal transaction or episode." As the phrase is ambiguous, the Court must "consider the purpose, the subject matter and the condition of affairs which led to its enactment," and construe it "to effectuate the underlying purposes of the law." McAllister, 225 F.3d at 986 (internal quotation omitted).

---

[7]The Supreme Court narrowly interpreted Codispoti in Lewis v. United States, apparently limiting it to circumstances "where the legislature has not specified a maximum penalty" for the crimes charged. 518 U.S. at 328-29.

[8]Thus, the strength of Codispoti after Lewis is irrelevant.

6

b. <u>Congressional Intent</u>

1. <u>ICRA History</u>

The ICRA was "the fruit of six years' labor" by Senator Sam Ervin of North Carolina, who was probably "the only member of the Senate who fully understood it." Donald L. Burnett, Jr., <u>An Historical Analysis of the 1968 "Indian Civil Rights" Act</u>, 9 Harv. J. on Legis. 557, 603 (1972). A former county judge and state supreme court justice, Senator Ervin apparently wanted to extend "the protection of constitutional rights" and civil liberties to Native Americans on Indian Reservations. <u>See</u> <u>id.</u> at 575. Accordingly, the Senator's original bill broadly "provided that any tribe exercising its powers of self-government would be subject to the same limitations and restraints as imposed upon the federal government by the Constitution."[9] <u>Id.</u> at 589; <u>see</u> <u>Santa Clara Pueblo v. Martinez</u>, 436 U.S. 49, 62 n.12 (1978).

Congress, however, found that many tribes were not "psychologically or financially prepared" to extend every constitutional right to their members. <u>See</u> Burnett, 9 Harv. J. on Legis at 589. These concerns led to a substitute bill, which protected only a set of specific rights. <u>Id.</u> at 590. One right not afforded was publicly funded counsel in tribal court. This was

---

[9]The only exception to this wholesale extension of civil rights was the equal protection requirement of the Fourteenth Amendment, which was withheld in recognition of the special ethnic character of Indian tribes. <u>See</u> <u>id.</u> at 589.

7

deemed too great a financial burden for already impoverished tribes. Id. at 590-91. Thus, the enacted version of the ICRA limited tribal court sentences to six months, with no guarantee of publicly provided counsel. See P.L. 90-284 § 202, 82 Stat. 77-78 (April 11, 1968).

In 1986, the ICRA was amended to "enhance the ability of tribal governments to prevent and penalize the traffic of illegal narcotics." P.L. 99-570 § 4217, 100 Stat. 3207-146 (Oct. 27, 1986). The amendment increased the maximum sentence to one year. Id. There have been no other amendments that impact this case.

### 2. Underlying Purposes

When the ICRA was passed, the Supreme Court had not yet definitively established a constitutional right to state-provided counsel in non-felony cases. See Beck v. Winters, 407 F.2d 125, 127-28 (8th Cir. 1969) ("[T]he Supreme Court of the United States has not expressly extended the Sixth Amendment right to assistance of counsel to misdemeanor cases."); cf. Gideon v. Wainwright, 372 U.S. 335 (1963) (establishing the right in felony cases). States, at that time, were not constitutionally required to provide counsel for indigent defendants exposed to sentences of six months or less. See Winters v. Beck, 397 S.W.2d 364 (Ark.), cert. denied, 385 U.S. 907 (1966) (reiterating that "no duty is imposed upon the trial court to appoint counsel for a defendant charged with a

misdemeanor" despite <u>Gideon v. Wainwright</u>).[10] Since tribal court defendants could "in no event" be sentenced to more than six months under the ICRA, Congress could see that if it required publicly provided counsel, it would de facto impose a greater duty upon the tribes than the Constitution then imposed upon the states. 25 U.S.C. § 1302(7). Thus, it made perfect sense for Congress to exclude publicly funded counsel from the ICRA.

Similarly, Congress knew in 1968 that the Major Crimes Act, which governs felony prosecution in Indian Country, ensured Indians facing serious charges the full panoply of constitutional rights in federal court. <u>See</u> 18 U.S.C. § 1153. Taken together, the ICRA and the Major Crimes Act created a balanced and logical regime: Indians accused of minor crimes faced minor penalties in tribal court where some constitutional rights were withheld; Indians accused of serious crimes faced serious penalties in federal court where all constitutional rights were available.

But this balance can be maintained only if "any one offense" is interpreted to mean "a single criminal transaction." Otherwise, tribal court defendants would be routinely exposed to serious sentences for minor crimes without guaranteeing them all their

---

[10]<u>But see</u> <u>Argersinger v. Hamlin</u>, 407 U.S. 25, 37 (1972) ("[N]o person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial.").

9

basic constitutional rights.[11] Congress surely did not intend this result. See Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."); cf. Bell v. United States, 349 U.S. 81 (1955) (transportation of two women across state lines at the same time constituted only one Mann Act violation for sentencing purposes).

Alternatively, Congress could have intended to adopt the strict "same offense" test applied in the double jeopardy context. See Blockburger v. United States, 284 U.S. 299, 304 (1932) (holding two offenses are not the "same" if "each provision requires proof of an additional fact which the other does not"). But the statutory history does not support such an intent. Given that the ICRA's central goal was to extend Constitutional protections to Native Americans, it would be bizarre to assume Congress intended to patch the crabbed double jeopardy standard onto unrelated provisions of the Act.[12]

The Court finds that Congress intended to adopt the concept

---

[11]For example, Red Lake Tribal Code § 505.01, subd. 2(b) makes theft of property valued at $101 a misdemeanor. So a person stealing a rare coin worth $101 at Red Lake faces up to six months in jail. Tribal Code § 500.02, subd. 3. But a person who pilfers a ten-coin collection could face ten counts and be exposed to up to five years in jail with no right to publicly funded counsel.

[12]The ICRA elsewhere parrots the language of the Fifth Amendment in prohibiting double jeopardy. 25 U.S.C. § 1302(3).

that separate crimes arising from a single criminal episode should normally be treated as a single offense for sentencing purposes.[13] See, e.g., Prince v. United States, 352 U.S. 322 (1957) (barring consecutive sentences for legally distinct but intrinsically related crimes of bank robbery and entering bank with intent to commit a felony); Bell, 349 U.S. at 84 ("[D]oubt will be resolved against turning a single transaction into multiple offenses . . . .") Fuller v. United States, 407 F.2d 1199, 1224 (D.C. Cir. 1968) (en banc) (interpreting prior law as "prohibiting the imposition of consecutive sentences . . . when the defendant has committed two or more legally distinct offenses" arising from what is "essentially a single course of conduct"). But see Gore v. United States, 357 U.S. 386 (1958); Blockburger, 284 U.S. at 304.

Considering the foregoing, the Court is convinced Congress did not intend to subject tribal court defendants to many years' imprisonment -- without any right to publicly funded counsel -- under the guise of a statute ostensibly extending the benefits of the United States Constitution.[14] The Court therefore interprets

---

[13]The United States Sentencing Guidelines reflect this concept. They seek to "limit the significance of the formal charging decision and to prevent multiple punishment for substantially identical offense conduct" by treating "as a single offense" legally distinct crimes that "represent essentially the same type of wrongful conduct with the same ultimate harm." U.S. Sentencing Guidelines Manual, §3D, Introductory Commentary at ¶¶ 3-4 (2004).

[14]The Court recognizes that this petitioner actually had the assistance of counsel in his tribal proceedings. This fact, however, is immaterial to the analysis of Congressional intent.

the ICRA's phrase "any one offense" to mean "a single criminal transaction."

    c.   A Single Transaction?[15]

Having found the ICRA authorizes a maximum 12-month prison term for all Tribal Code violations arising from a single criminal transaction, the Court must now consider whether petitioner's four violations were in fact part of "a single criminal transaction." In interpreting this phrase, the Court finds guidance in Rule 8(a) of the Federal Rules of Criminal Procedure, which permits joinder of separate offenses into a single indictment when they "are based on the same act or transaction." Cf. Ashe, 397 U.S. at 454 n.8 (Brennan, J., concurring). The Court also considers the standard for supplemental (formerly "pendant") federal jurisdiction over state law claims, where state and federal claims arise from "a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). These principles suggest that separate violations form a single criminal transaction when they are factually and legally intertwined.

Here, petitioner's charges arise from the common nucleus of operative fact surrounding his ill-fated drive on April 1, 2000, so the violations are factually intertwined. They are legally

---

[15]The Court is aware that another United States District Court reached a contrary decision in a similar case. See Ramos v. Pyramid Tribal Court, 621 F. Supp. 967 (D. Nev. 1985). That decision is not binding on the Court, however, and the Court declines to follow it.

intertwined, as well. The charge arising out of petitioner's flight from the scene of the accident, for example, is certainly intertwined with the charges arising out of the accident itself. And the DUI and the refusal to take a sobriety test are but two sides of the same coin, given that the refusal to take the test is itself substantive evidence of a DUI violation. See Tribal Code § 600.03, subd. 2 ("[T]he refusal to take the test shall be offered into evidence" to prove a DUI charge).

Similarly, the negligent homicide charge is legally intertwined with the DUI. A person is guilty of negligent homicide under the Red Lake Tribal Code if he or she kills a person "as a result of operation of a motor vehicle . . . [i]n a negligent manner while under the influence of alcohol." Tribal Code § 502.04.[16] These same words -- "the operation of a motor vehicle . . . while under the influence of alcohol" -- aptly paraphrase the definition of DUI. Cf. Tribal Code § 600.02, subd. 1 ("It is a gross misdemeanor for any person to drive or operate any motor vehicle . . . [w]hen the person is under the influence of alcohol."). The DUI and negligent homicide are intertwined.

In summary, the sobriety test violation is intertwined with the DUI, the DUI is intertwined with the negligent homicide, and the failure to stop is intertwined with all of the underlying

---

[16]Alternatively, a person commits negligent homicide when he or she causes the death of another by driving a vehicle "[i]n a grossly negligent manner." Id.

13

crimes. These four offenses therefore constitute a single criminal transaction.[17]

III. Conclusion

The violations underlying petitioner's tribal court sentence are facets of a single criminal event. The ICRA limits tribal court sentences to 12 months' imprisonment for this "one offense." Accordingly, the 30-month sentence the tribal court imposed in this case is illegal, and IT IS ORDERED that:

1.  The petition for writ of habeas corpus [Docket No. 1] is granted.

2.  The matter is remanded to the Red Lake Tribal Court for further proceedings in accord with this Order.

Dated: March 30, 2005

                                    s/ James M. Rosenbaum
                                    JAMES M. ROSENBAUM
                                    United States Chief District Judge

---

[17] It is unnecessary to consider whether the license and liquor violations were part of the same criminal transaction because imprisonment is not available for these offenses.